STATE OF MAINE                                         SUPERIOR COURT
YORK, ss.                                              CIVIL ACTION
                                                       DOCKET NO. RE-10-106
BAYVIEW LOAN SERVICING, LLC,  )                        JON  *illegible* 4/2013
                              )
        Plaintiff,            )
                              )
                              )                        JUDGMENT OF
        v.                    )                        FORECLOSURE AND SALE
                              )                        ORDER
JAMES P. AUSTIN               )
                              )
        Defendants,           )
                              )

I.      Background

On or about December 15, 2005, Defendant, James P. Austin, executed a

promissory note in the principal amount of $1.1 million, along with a mortgage on his

property at 37 Pepperell Road, Kittery, Maine with Middlebury Equity Partners, LLC

(MEP). The note and mortgage are dated November 17, 2005. A notary acknowledged

the signing of the mortgage on December 9, 2005. Although Defendant originally

believed that the loan was also secured to two additional parcels purchased in his wife's

name at the same time, the language attached to the mortgage describing the property

secured the loan to only the 37 Pepperell Road property.

On November 28, 2005, prior to the closing, MEP assigned the mortgage to

Plaintiff. Plaintiff recorded the assignment of the mortgage on March 20, 2006, after the

mortgage had been executed and recorded. MEP endorsed the Note in blank, thereby

making it payable to the holder, dated November 17, 2005, the same date as listed on the

executed version of the note.

Defendant's loan went into default in July 2008, due to late payments in violation

of the terms of the mortgage agreement. Defendant contacted Plaintiff and requested a

1

loan modification. In the Loan Adjustment Agreement, signed and executed by Defendant on October 29, 2008, Defendant agreed that he had "no defenses claims or offsets" with respect to the amount due on the loan.

Defendant's loan again went into default in May 2010. Plaintiff mailed Defendant two notifications of default including a list of HUD counselors. Plaintiff alleges Defendant owed Plaintiff $1,335,481.31 as of November 7, 2012, plus attorney fees and costs. Plaintiff brought this action on September 7, 2010 seeking a judgment of foreclosure and sale.

II. Discussion

In order to succeed in a mortgage foreclosure action, the plaintiff must be able to show, at least,

- "the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any,

- properly present proof of ownership of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage,

- a breach of condition in the mortgage note, including any reasonable attorney fees and court costs

- the order of priority and any amounts that may be due to other parties in interest, including any public utility easements,

- evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements,

2

- after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules, and

- if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act."

Chase Home Finance LLC v Higgins, 2009 ME 136, ¶11, 985 A.2d 508, (citations omitted). A party seeking to foreclose must strictly comply with all statutory steps. Camden Nat'l Bank v. Peterson, 2008 ME 85, ¶21, 948 A.2d 1251. Plaintiff has shown that a mortgage exists, that it is the owner of both the note and the mortgage, that there was a breach of condition of the mortgage, that notice was served, and that neither mediation nor the Servicemembers Civil Relief Act apply to Defendant. Therefore, Plaintiff's Motion for Judgment will be granted.

The mortgage and the note in question exist and are not disputed by Defendant. Furthermore, Defendant does not dispute executing the Loan Adjustment Agreement on October 29, 2008, which reasserted the loan amount and his obligation to make monthly loan payments.

Defendant has defaulted on the terms of the mortgage agreement and subsequent Loan Adjustment Agreement. Defendant does not dispute that he failed to make the loan payments, which led to a default in June 2008, and again in May 2010.

The property is not Defendant's primary residence, therefore Defendant is not entitled to mediation on the matter. 14 M.R.S. §6321-A (2012). Nonetheless, Defendant did not attend the scheduled informational session regarding mediation.

3

Plaintiff is not currently a member of the military, therefore not entitled to relief under the Servicemembers Civil Relief Act.

Plaintiff has shown evidence of ownership of the mortgage and note. *See* 14 M.R.S. § 6321(2012). Plaintiff presented evidence that the note was properly endorsed in blank and that Plaintiff is the current holder of the note. Plaintiff has offered the mortgage and an assignment recorded on March 20, 2006 as evidence of ownership of the mortgage. Plaintiff has complied with the statutory requirements.

The Court concludes that the entire loan amount was agreed upon at the closing on or about December 15, 2005. "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restat 2d of Contracts, § 50. At the closing, Defendant signed the closing documents agreeing to the terms of the Mortgage and securing the 37 Pepperell Road property with the Note, in the form offered by MEP. The Court interprets the signed agreements as they are written.

Even if the Court were to find that the note did not properly report the loan amount, the Defendant signed the Loan Adjustment Agreement in 2008, reasserting the amount owed and waiving any previously arising defenses to the amount due. Defendant's argument that he was induced to execute the mortgage and note in 2005 under the pretense that the amount due would change, was waived at the time of the execution of the Loan Adjustment Agreement. Finally, the fact that the description of the property attached to the Mortgage secured only one of the parcels owned by Defendant and his wife does not affect Plaintiff's ability to enforce the Mortgage agreement with respect to the encumbered parcel.

4

III. Conclusion

The Court finds that there has been a breach of conditions in Bayview Loan Servicing, LLC (hereinafter "BLS")'s Mortgage, that there is due BLS on its Note and Mortgage the principal amount of $964,660.60, interest thereon to November 2, 2012 in the amount of $166,792.00 with additional interest accruing on said principal balance at the note rate of 6.25%, default interest in the amount of $179,622.88 accruing on said principal balance at the note rate of 7.00%, late charges in the amount of $1,201.38, escrow advances of $20,710.70, corporate advances of $2,482.25, attorneys' fees and costs for services provided by Bendett & McHugh, P.C. in the amount of $3,053.25 (as indicated in the Affidavit of Elizabeth M. Crowe, dated November 6, 2012), plus any additional fees and costs incurred for trial and post-judgment proceedings, through and including the sale of the property.

The order of priority of the liens is:

a. First, to BLS on its Mortgage, dated November 17, 2005 and recorded in the York County Registry of Deeds in Book 14708, Page 387, in the principal amount of $964,660.60, interest thereon to November 2, 2012 in the amount of $166,792.00, and interest continuing to accrue at the note rate of 6.25%, default interest thereon to November 2, 2012 in the amount of $179,622.88 and default interest continuing to accrue at the note rate of 7.00% together with additional interest and costs as set forth above.

b. Second, should any surplus funds remain, said surplus shall be directed to Defendant, James P. Austin.

Pursuant to 14 M.R.S.A. §§ 1602-B and 1602-C the prejudgment and post judgment interest rate is the note rate of 6.25% plus the default rate of 7.00%.

WHEREFORE, it is hereby expressly directed that an entry of Judgment of Foreclosure and Sale be made in favor of BLS on its Complaint for Foreclosure by Civil

5

Action, and, therefore, it is hereby ordered and decreed that if the Defendant, his heirs and assigns, do not pay to BLS, its successors and assigns, the amount of the total claim due together with accrued interest and other charges as set forth above within ninety (90) days of the date hereof, then BLS, its successors and assigns, shall be entitled to exclusive possession of the real estate, and BLS may sell Defendant's real estate and disburse the proceeds of the sale, after deducting the expenses thereof, first to BLS on its Mortgage as more fully set forth in (a.) above; second, should any surplus funds remain, to Defendant James P. Austin, as more fully set forth in (b.) above.

Defendant and all other occupants are Ordered to vacate the real estate upon expiration of the statutory ninety (90) day redemption period if Defendant has not by that date redeemed the real estate in accordance with statutory procedure. A Writ of Possession shall be issued to BLS against Defendant and all other occupants for possession of said real estate if it is not redeemed as aforesaid.

A Writ of Execution shall be issued by this Court for any deficiency following the foreclosure sale.

Pursuant to 14 M.R.S.A. § 2401(3), the Court finds that all parties have received all required notice of the proceedings and that all notice has been given in accordance with the applicable provisions of the Maine Rules of Civil Procedure and if the notice was served or given pursuant to an order of a court, including service by publication, that the notice was served or given pursuant to the order.

The names and addresses of all parties to this action and their counsel are as follows:

Bayview Loan Servicing, LLC          James P. Austin
c/o Julia G. Pitney, Esq.            37 Pepperrell Road

6

Drummond & Drummond, LLP
One Monument Way
Portland, Maine 04101

Kittery Point, Maine
Counsel: S. James Levis, Jr., Esq.

The real estate, which is the subject of this foreclosure action, is situated 37 Pepperrell Road, Kittery Point, Maine (being more particularly described in Exhibit A attached hereto).

BLS is Ordered, after the expiration of the appeal period, to record an attested copy of this Judgment of Foreclosure and Sale and Order in the York County Registry of Deeds and shall pay for the associated recording fees.

The Clerk is specifically directed pursuant to M.R. Civ. P. 79(a) to enter this Judgment on the civil docket by a notation incorporating it by reference.

Dated: _____2/7_____, 2013 _____

Justice, Maine Superior Court

**ORDER ENTERED IN COURT'S DOCKET ON:** ____2/7/13____, 2012

I hereby certify that all applicable appeal periods have expired without action.

Dated: _____, 2012 _____

Clerk, Maine Superior Court

7

A certain lot or parcel of land with the improvements thereon located on the northerly side of Pepperell Road (Route 103), in the Town of Kittery, York County, State of Maine, and being a portion of the property depicted on a plan entitled "Boundary Survey for James Austin, Pepperill Road, Kittery Point, Maine," by Anderson Livingston Engineers, Inc. dated: September 27, 2005, File No. 6014, Plan No. 217.050901 and more particularly bounded and described as follows:

BEGINNING at a drill hole set on the northerly sideline of Pepperell Road (Route 103) at the southeasterly corner of the land to be conveyed and also being the southwesterly corner of land now or formerly of R.Snowdon Smith,

Thence S 84° 06' 17" W, along a stone wall and the northerly sideline of said Pepperell Road (Route 103), a distance of eighty and fifty two hundredths (80.52) to a point at a break in the stone wall;

Thence S 87° 30' 13" W, along the northerly sideline of said Pepperell Road (Route 103), a distance of thirteen and eighty four hundredths (13.84) to a point;

Thence S 85° 34' 11" W, along a stone wall and the northerly sideline of said Pepperell Road (Route 103), a distance of seventy five and eighty nine hundredths (75.89) to a point:

Thence S 83° 03' 10" W, along a stone wall and the northerly sideline of said Pepperell Road (Route 103), a distance of forty two and thirty four hundredths (42.34) to a point at the southeasterly corner of land now or formerly of Dorothy M. Avery;

Thence N 05° 29' 53" W, along land of said Dorothy M. Avery, a distance of one hundred twenty seven and twenty hundredths (127.20) feet to a point at the northeasterly corner of land of said Avery;

Thence S 86° 00' 59" W, along land of said Dorothy M. Avery, a distance of one hundred twenty seven and twenty hundredths (115.05) feet to a point at the northwesterly corner of land of said Avery at a stonewall and land now or formerly of Nelson E and Elaine J. Paine;

Thence N 10° 50' 32" E, along land of said Nelson E and Elaine J. Paine, and a stonewall a distance of one hundred four and thirty two hundredths (104.32) feet to a point at the end of the stonewall;

Thence N 22° 47' 50" E, along land of said Nelson E and Elaine J. Paine, a distance of one hundred fifty seven and twenty six hundredths (157.26) feet to a point at the northeasterly corner of land said Nelson E and Elaine J. Paine;

Thence N 68° 03' 09" W, along a barb wire fence and land of said Nelson E and Elaine J. Paine, a distance of two hundred forty three and seventy four hundredths (243.74) feet to a point in a stone wall at the northwesterly corner of land of said Nelson E and Elaine J. Paine and the apparent easterly sideline of Spurhawk Lane;



Thence N 27° 38' 48" E, along a stone wall and land of others unknown, a distance of fifty three and seventy hundredths (53.70) feet to a point;

Thence N 58° 23' 29" E, along a stone wall and land of others unknown, a distance of forty eight and ninety two hundredths (48.92) feet to a point;

Thence N 60° 26' 09" E, along a stone wall and land of others unknown, a distance of fifty nine and thirteen hundredths (59.13) feet to a point;

Thence N 59° 56' 37" E, along a stone wall and land of others unknown, a distance of thirty eight and thirty one hundredths (38.31) feet to a drill hole;

Thence N 23° 34' 44" E, along a stone wall and land of others unknown, a distance of fifty four and twenty seven hundredths (54.27) feet to a point at land of Tudor M. Austin;

Thence S 27° 10' 40" E, along land of Tudor M. Austin, a distance of one hundred eighty one and fifty five hundredths (181.55) feet to a point said point being the southerly corner of land of Tudor M. Austin;

Thence continuing along land of Tudor M. Austin and a curve concave to the northeast as defined by the following curve data: having a radius of 270.00 feet; an arc length of 150.00 feet; a central angle of 31° 49' 50" and a chord which bears N 07° 39' 49" E a distance of one hundred forty eight and eight hundredths (148.08) feet to a point;

Thence S 66° 25' 16" E continuing along land of Tudor M. Austin a distance of forty and no hundredths (40.00) feet to a point at land of the Lawrence Lane Trust;

Thence continuing along land of the Lawrence Lane Trust and a curve concave to the northeast as defined by the following curve data: having a radius of 230.00 feet; an arc length of 151.50 feet; a central angle of 37° 44' 28" and a chord which bears S 04° 42' 30" W a distance of one hundred forty eight and seventy eight hundredths (148.78) feet to a point;

Thence continuing along land of the Lawrence Lane Trust and a curve concave to the northwest as defined by the following curve data: having a radius of 170.00 feet; an arc length of 27.87 feet; a central angle of 9° 23' 37" and a chord which bears S 09° 27' 55" E a distance of twenty seven and eighty four hundredths (27.84) feet to a point;

Thence N 59° 58' 08" E, along land of the Lawrence Lane Trust, a distance of one hundred twenty six and forty six hundredths (126.46) feet to a point;

Thence N 31° 17' 14" E, continuing along land of the Lawrence Lane Trust, a distance of fifty seven and seventy seven hundredths (57.77) feet to a point;

Thence N 24° 34' 44" E, continuing along land of the Lawrence Lane Trust, a distance of one hundred twenty and thirty eight hundredths (120.38) feet to a point (herein designated as point A);

Thence continuing the same course to the normal low water line of Barter's Creek;

Thence southeasterly and southwesterly by the normal low water line of Barter's Creek to the northerly boundary of land now or formerly of R. Snowden Smith;

Thence westerly along said land now or formerly of Smith to a point near the normal high water line of Barter's Creek, which said point is located a tie course of S 04° 42' 04" E, 212.66 feet from point A;

Thence continuing from last named point N 86° 50' 38" W, along land now or formerly of R.Snowdon Smith, a distance of thirty one and four hundredths (31.04) feet to a ¾" iron pin at the northerly end of a stonewall;

Thence S 00° 02' 59" W, along a stone wall and land now or formerly of R.Snowdon Smith, a distance of eighty three and eighty seven hundredths (83.87) feet to a point;

Thence S 05° 34' 03" E, continuing along a stone wall and land now or formerly of R.Snowdon Smith, a distance of fifty nine and ninety one hundredths (59.91) feet to a point;

Thence S 00° 41' 36" E, continuing along a stone wall and land now or formerly of R.Snowdon Smith, a distance of one hundred five and thirty hundredths (105.30) feet to a point;

Thence S 03° 29' 37" E, continuing along a stone wall and land now or formerly of R.Snowdon Smith, a distance of fifty eight and nineteen hundredths (58.19) feet to a point;

Thence S 03° 47' 00" W, continuing along a stone wall and land now or formerly of R.Snowdon Smith, a distance of one hundred seven and thirty nine hundredths (107.39) feet to the Point of Beginning.

The herein described parcel of land contains 4.25 acres plus or minus of land.

EASEMENTS

The parcel is subject to an easement as described in deed from Horace H. Walton to Dorothy M. Avery, dated December 14, 2000, recorded at the York County Registry of Deeds Book 10356, Page 110.

Said parcel is also subject to a right of way and utility services easement benefiting lots deeded from Grantor to Tudor M. Austin and to the Trustees of Lawrence Lane Trust, said easement area being more particularly described as follows;

Beginning at the southeasterly corner of land now or formerly of Dorothy M. Avery and the northerly sideline of Pepperell Road (Route 103);

Thence N 05° 29' 53" W, along land of said Dorothy M. Avery, a distance of one hundred twenty seven and twenty hundredths (127.20) feet to a point at the northeasterly corner of land of said Avery;

Thence along a curve concave to the northeast as defined by the following curve data: having a radius of 140.00 feet; an arc length of 173.38 feet; a central angle of 70° 57' 21" and a chord which bears N 12° 40' 51" W a distance of one hundred sixty two and fifty one hundredths (162.51) feet to a point;

Thence N 22°47'50" E, a distance of seventy eight and forty four hundredths (78.44) feet to a point,

Thence along a curve concave to the northwest as defined by the following curve data: having a radius of 130.00 feet; an arc length of 83.86 feet; a central angle of 36° 57' 34" and a chord which bears N 4° 19' 03" E a distance of eighty-two and forty one hundredths (82.41) feet to a point;

Thence along a curve concave to the northeast as defined by the following curve data: having a radius of 270.00 feet; an arc length of 27.85 feet; a central angle of 5° 54' 38" and a chord which bears N 11° 12' 25" W a distance of twenty seven and eighty four hundredths (27.84) feet to a point;

Thence continuing along land of Tudor M. Austin and a curve concave to the northeast as defined by the following curve data: having a radius of 270.00 feet; an arc length of 150.00 feet; a central angle of 31° 49' 50" and a chord which bears N 07° 39' 49" E a distance of one hundred forty eight and eight hundredths (148.08) feet to a point;

Thence S 66° 25' 16" E continuing along land of Tudor M. Austin a distance of forty and no hundredths (40.00) feet to a point at land of the Lawrence Lane Trust;

Thence continuing along land of the Lawrence Lane Trust and a curve concave to the northeast as defined by the following curve data: having a radius of 230.00 feet; an arc length of 151.50 feet; a central angle of 37° 44' 28" and a chord which bears S 04° 42' 30" W a distance of one hundred forty eight and seventy eight hundredths (148.78) feet to a point;

Thence continuing along land of the Lawrence Lane Trust and a curve concave to the northwest as defined by the following curve data: having a radius of 170.00 feet; an arc length of 27.87 feet; a central angle of 9° 23' 37" and a chord which bears S 09° 27' 55" E a distance of twenty seven and eighty four hundredths (27.84) feet to a point said point being the southerly corner of land of the Lawrence Lane Trust;

Thence continuing along land of the Lawrence Lane Trust and a curve concave to the northwest as defined by the following curve data: having a radius of 170.00 feet; an arc length of 81.79 feet; a central angle of 27° 33' 57" and a chord which bears S 09° 00' 51" W a distance of eighty one and no hundredths (81.00) feet to a point;

Thence S 22° 47' 50" W, a distance of seventy eight and forty four hundredths (78.44) feet to a point,

Thence along a curve concave to the northeast as defined by the following curve data: having a radius of 100 feet; an arc length of 123.84 feet; a central angle of 70° 57' 21" and a chord which bears S 12° 40' 51" E a distance of one hundred sixteen and eight hundredths (116.08) feet to a point;

Thence along a curve concave to the southwest as defined by the following curve data: having a radius of 40.00 feet; an arc length of 29.77 feet; a central angle of 42° 38' 45" and a chord which bears S 26° 49' 38" E a distance of twenty nine and nine hundredths (29.09) feet to a point;

Thence S 05° 29' 53" E, a distance of one hundred six and forty-seven hundredths (106.47) feet to a point;

Thence along a curve concave to the northeast as defined by the following curve data: having a radius of 20.00 feet; an arc length of 31.04 feet; a central angle of 88° 55' 56" and a chord which bears S 49° 57' 51" E a distance of twenty-eight and two hundredths (28.02) feet to a point at a stone wall;

Thence S 85° 34' 11" W, along a stone wall and the northerly sideline of said Pepperell Road (Route 103), a distance of seventeen and thirty-five hundredths (17.35) feet to a point:

Thence S 83° 03' 10" W, along a stone wall and the northerly sideline of said Pepperell Road (Route 103), a distance of forty two and thirty four hundredths (42.34) to a point at the southeasterly corner of land now or formerly of Dorothy M. Avery and the Point of Beginning.

Bearings contained herein are based on Magnetic North in January 2000.

Said parcel being a portion of the premises conveyed to Horace H. Walton and Ann L. Walton by deed of the Estate of Grace W. Treadwell dated May 27, 1971 and recorded in the York County Registry of Deeds in Book 1906, Page 435. Ann L. Walton died October 11, 1985 leaving Horace H. Walton as surviving joint tenant.

Said parcel is shown as Lot C on a plan entitled *Land of Horace H. & Ann L. Walton prepared for James Austin, 37 Pepperell Road, Kittery Point, Maine,* prepared by Civil Consultants dated November 17, 2005, and recorded in the York County Registry of Deeds at Plan Book _____, Page _____.

ATTORNEYS FOR PLAINTIFF:
JULIA PITNEY, ESQ.
ANDREW W. SPARKS, ESQ.
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND, ME 04101

ELIZABETH M. CROWE, ESQ.
BENDETT & MCHUGH
270 FARMINGTON AVENUE, SUITE 151
FARMINGTON, CT 06032

ATTORNEY FOR DEFENDANT:
S. JAMES LEVIS, JR., ESQ.
LAW OFFICES OF S. JAMES LEVIS, JR., P.A.
5 WEBHANNET PLACE, #12
KENNEBUNK, ME 04043